Edward C. Underwood, et al., v. The Whiteside County Building and Loan Association.

Gen. No. 4,353.

1. INTEREST—*when, properly allowed.* Interest is properly allowed where it appears that the judgment is for money received by the defendant for the use of another and retained by him without the owner's knowledge.

2. COMPUTATION—*when error in, will not reverse.* An error in computation amounting to $2.94 is not sufficient to reverse, upon the principle of the maxim *de minimis non curat lex.*

Action of debt. Appeal from the Circuit Court of Whiteside County; the Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the April term, 1904. Affirmed. Opinion filed August 24, 1904.

C. L. and C. E. SHELDON, for appellants.

FRANK J. BOWMAN, for appellee.

388    APPELLATE COURTS OF ILLINOIS.

VOL. 115.] Underwood v. Whiteside County Building & Loan Ass'n.

MR. JUSTICE DIBELL delivered the opinion of the court.

Edward C. Underwood was secretary of the Whiteside County Building and Loan Association and gave it his bond with surety, conditioned faithfully to discharge the duties of said office, and safely keep and pay over all moneys that came to his hands by virtue of his office, and to render a just and true account of the same when required. This was a suit upon that bond to recover money alleged to have been received by Underwood while he held that office. The pleas traversed different allegations in the assignment of a breach of the bond. Issue was joined, and the cause was tried without a jury. Plaintiff had judgment for the penalty of the bond in debt, and for $349.74 damages, the debt to be satisfied by payment of the damages, interest thereon and costs. Defendants appeal.

The case arose as follows: While Underwood was secretary the association held two mortgages given by A. S. Morris on parts of a lot in the village of Lyndon. H. C. Ward was attorney for the association, and foreclosed these mortgages. The association bought in the property for $380 and held a master's certificate. In January, 1896, Morris offered the association $250 for an assignment of the certificate to his wife. The association referred the offer to Ward, with power to act. Ward accepted the offer and gave Morris till the first of March to pay the money. The latter part of February Morris met Ward in Morrison, the county seat, and paid Ward the money, and Ward gave Morris a receipt stating the certificate was to be assigned to Mrs. Morris. The association was located at Sterling and Ward lived there, and did not have the certificate at Morrison. Ward told Morris he would have the certificate assigned to Mrs. Morris and mailed to her. The certificate was so assigned by the vice-president, in the absence of the president, and it was mailed to and received by Mrs. Morris. On April 16, 1896, Underwood resigned and his successor was appointed. Underwood remained in the office assisting his successor till May 1, 1896. On April 30 he made an entry transferring this Morris account to real estate, as if the asso-

ciation owned the real estate.   Underwood afterwards re-
moved to Philadelphia.   The local committee went over the
books several times without discovering that the account
had been improperly transferred to real estate.   Plaintiff
claims Ward paid the money at the time to Underwood or
to his clerk, Miss Eyster.   Underwood never charged him-
self with the $250 nor-accounted for it.   This suit is brought
to recover said sum and interest thereon from Underwood
and his surety.

Ward testified he paid the money at the office of the as-
sociation either to Underwood or to Miss Eyster, but to
which he was not sure; that he left in the office a written
direction to cause the certificate to be assigned to Mrs.
Morris and mailed to her at Lyndon, Illinois; that the next
morning Underwood called him into the association office,
near Ward's office, and told him the president was in Du-
buque, and he did not know how to draw an assignment of
the certificate; that Ward told Underwood the vice-presi-
dent could sign it, and drew the assignment on the certifi-
cate and left it with Underwood to obtain the signature of
the vice-president, and did not see it again before its deliv-
ery to Mrs. Morris.   Underwood testified Ward did not
pay him the money.   Miss Eyster testified Ward did not
pay it to her.   Underwood denied that the assignment was
written in his office, but testified he delivered the certifi-
cate to Ward in January, assigned in blank, when the mat-
ter was referred to Ward for settlement.   The written
direction by Ward to have the assignment made to Mrs.
Morris and mailed to her was long afterwards found among
the association's papers relating to this Morris loan.   It
had therefore been in the custody of Underwood, and Un-
derwood's possession of that direction was apparently in-
consistent with his testimony that he delivered the certificate
to Ward in January assigned in blank.   Nor is it likely the
assignment would have been executed in January by the
vice-president, as the president was then present.   It seems
to us inexplicable that Underwood could in good faith
have charged this account to real estate, when he knew of

390 APPELLATE COURTS OF ILLINOIS.

VOL. 115.] Underwood v. Whiteside County Building & Loan Ass'n.

an accepted offer to sell the certificate and that the certificate had left his possession long before. If he did not know whether the cash had been paid for it, he could hardly have failed to inquire whether the settlement had been carried out, before he made such an entry, in view of the fact that the certificate was not in the office. The natural result of the entry was to delay a discovery of the real facts. These and some other circumstances tend to corroborate Ward's version of the transaction, while other circumstances tend to show Underwood's account is correct. To detail and discuss each of these would unduly lengthen this opinion. We have endeavored to give them due consideration. The trial judge saw and heard the witnesses, and concluded that Underwood's office received the money. The proof would not warrant our disturbing his conclusion. We cannot say the proof required him to find the other way.

Defendants claim there were errors in the rulings upon the admission of testimony. We have examined these objections and find them unimportant, and that the rulings were substantially correct.

The court allowed interest from the day the money was received at five per cent per annum. Defendants insist they are not liable for interest. The statute allows interest at five per cent on money received to the use of another and retained without the owner's knowledge and on money withheld by an unreasonable and vexatious delay in payment. When the court found the money had been at the time paid into Underwood's office and not placed upon the books of the association it necessarily found that he or his clerk had either intentionally or by accident concealed the receipt of the money and retained it without the owner's knowledge, and without reporting it or crediting it to the owner. We conclude the same proof which made him liable at all made him liable for interest.

It is said that a computation will show that the court allowed $2.94 too much interest, and therefore we should reverse the judgment. The maxim *de minimis non curat lex* disposes of this contention, and besides it is not assigned

for error that the verdict is excessive except in allowing interest, and further the error in computation was not called to the attention of the court below, where it is obvious it would have been corrected.

The judgment is affirmed.                    *Affirmed.*